**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAELA M. WARK,<br><br>               Plaintiff,<br>   v.<br><br>J5 CONSULTING, LLC, and MICHAEL JOHNSON,<br><br>          Defendants. | Civil Action No. 23-00266 (GC) (DEA)<br><br>**OPINION** |

**CASTNER, District Judge**

      **THIS MATTER** comes before the Court by way of a Motion to Dismiss, under Federal Rule of Civil Procedure ("Rule") 12(b)(6), filed by Defendants J5 Consulting, LLC and Michael Johnson. (ECF No. 8.) Plaintiff Michaela M. Wark opposed,[1] and Defendants replied. (ECF Nos. 10 & 14.) The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Court **GRANTS** in part and **DENIES** in part Defendants' motion.

---

[1] Plaintiff also cross moves for leave to amend her Complaint under Rule 15(a)(2) to the extent any portion of the Complaint is dismissed. (ECF No. 10 at 18.) Because the Court will dismiss part of Plaintiff's Complaint without prejudice under Rule 12(b)(6), the Court finds good cause to grant Plaintiff leave to amend her Complaint within thirty (30) days of the entry of the accompanying Order.

I.      **BACKGROUND**

     **A. FACTUAL BACKGROUND**

     J5 is a limited liability company registered in Florida with its principal place of business in Connecticut. (ECF No. 1-1 ¶ 2.[2]) Johnson is a member, founder, and chief executive officer of J5 and resides in Connecticut. Plaintiff worked for J5 as a senior consultant and is a resident of New Jersey.[3] (*Id.* ¶ 1.)

     Plaintiff alleges that on June 24, 2020, Johnson showed up at Plaintiff's home in New Jersey "to inform her that he was making her a partner and a 5% owner of J5" and provided her a letter that memorialized her five-percent ownership interest in J5.[4] (*Id.* ¶ 9.) The letter states: "Your promotion to Partner is not simply a title promotion[,] it comes with a 5% ownership. That makes you . . . and my family owners of J5"; it adds that Plaintiff should "keep this letter for your records." (*Id.* ¶ 10.) Shortly after, Johnson gave Plaintiff new business cards listing Plaintiff as a

---

[2]      Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]      The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. The Court notes that "the citizenship of an LLC is determined by the citizenship of its members." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). Moreover, "[a] challenge to subject matter jurisdiction may be raised at any point in the litigation, and, when the jurisdictional basis is diversity of citizenship, diversity is assessed as of the time the complaint was filed." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018) (citing *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71, (2004)). The Court also notes its inherent authority to raise subject-matter jurisdictional issues *sua sponte* at anytime throughout the litigation. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003) ("A necessary corollary is that the court can raise sua sponte subject-matter jurisdiction concerns."). Based on the Court's review of the record, it appears that the parties were diverse at the time the Complaint was filed. (ECF No. 7.)

[4]      On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

"partner." (*Id.* ¶ 12.) Plaintiff also alleges that at Johnson's request, Plaintiff changed her email signature block to include her new "partner" title. (*Id.* ¶ 13.)

On September 2, 2021, Plaintiff was diagnosed with a "clear cell ovarian tumor on her right ovary," which had ruptured and required emergency surgery. (*Id.* ¶ 15.) Plaintiff underwent a full hysterectomy, and the next month, she began chemotherapy treatment. (*Id.* ¶¶ 16-17.) In late October 2021, Plaintiff's chemotherapy sessions were paused so that Plaintiff could undergo two emergency surgeries to remove bowel obstructions. (*Id.* ¶ 18.) In December 2021, Plaintiff restarted chemotherapy, until her final session on January 31, 2022. (*Id.* ¶ 19.)

Plaintiff further alleges that on May 20, 2022, she informed J5 that she would likely be returning to work in September 2022 "unless her medical scans – scheduled for June 22, 2022 – revealed a problem." (*Id.* ¶ 22.) On May 22, 2022, Plaintiff met with Maria Santos Bathan, another J5 partner, where the two allegedly discussed Plaintiff's return to work in September 2022. (*Id.* ¶ 23.) Johnson then texted Plaintiff on May 24, 2022, asking her to keep him informed of her anticipated return date. (*Id.* ¶ 24.) On May 26, 2022, Plaintiff and Bathan spoke again to discuss various work issues. They did not discuss Plaintiff's expected return date. (*Id.* ¶ 25.)

On May 31, 2022, Plaintiff received a termination notice from J5 in the mail. (*Id.* ¶ 26.) The letter was sent on May 26th and was dated May 16, 2022. (*Id.*)

Plaintiff further alleges that J5 paid her base salary while she waited for her long-term disability insurance to take effect. (*Id.* ¶ 20.) And, once her insurance took effect, J5 paid the forty-percent difference in her salary that was not covered by insurance. (*Id.*) Finally, Plaintiff alleges that she kept J5 and Johnson informed of her health condition and anticipated return date. (*Id.* ¶ 21.)

3

**B. PROCEDURAL BACKGROUND**

On October 26, 2022, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Monmouth County. (ECF No. 1-1.)  On January 18, 2023, Defendants timely removed the case to federal court.[5]  (ECF No. 1.)  Plaintiff's Complaint asserts four causes of action: (1) disability discrimination under the New Jersey Law Against Discrimination (NJLAD) (against both Defendants); (2) breach of contract (against both Defendants); (3) breach of the implied covenant of good faith and fair dealing (against both Defendants); and (4) accounting (against J5). (*See generally* ECF No. 1-1.)

**II.   LEGAL STANDARD**

On a Rule 12(b)(6) motion for failure to state a claim, "a court must 'accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)).  When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675).  "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Third, the court must determine whether the well-pleaded facts "plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679); *see also Fowler v. UMPC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  A complaint that does not demonstrate more than a

---

[5]     Defendants were served with a copy of the Summons and Complaint on December 19, 2022. (ECF No. 1 at 2.)  Because Defendants removed the case within thirty days after service, removal was timely. 28 U.S.C. § 1446(b).

"mere possibility of misconduct" must be dismissed.  *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Rule 8 sets forth general rules of pleading and requires (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) allegations that are "simple, concise, and direct."  Fed. R. Civ. P. 8.  Rule 8 maintains a "threshold requirement that a complaint must contain a "plain statement" indicating that the complaint possesses enough heft to "sho[w] that the pleader is entitled to relief."  *Twombly*, 550 U.S. at 557 (citing Fed. R. Civ. P. 8).

## III.   <u>DISCUSSION</u>

### A.  NJLAD

Defendants move to dismiss Count One for disability discrimination under the NJLAD. The NJLAD makes it illegal

> [f]or an employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, pregnancy or breastfeeding, sex, gender identity or expression, [or] <u>disability</u> . . . to refuse to hire or employ or to bar or to discharge ... from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . .
>
> [N.J.S.A. 10:5-12(a) (emphasis added).]

"'The law is thus intended to protect 'the civil rights of individual aggrieved employees' as well as 'the public's strong interest in a discrimination-free workplace.'"  *Meade v. Twp. of Livingston*, 265 A.3d 148, 159 (N.J. 2021) (quoting *Rios v. Meda Pharm., Inc.*, 252 A.3d 982, 986 (N.J. 2021)).  "To analyze employment discrimination claims brought under the [NJ]LAD, New Jersey has adopted the "procedural burden-shifting methodology" set forth in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802-05 (1973)." *Id.* (citing *Zive v. Stanley Roberts, Inc.*, 867 A.2d 1133 (N.J. 2005)).

First, the plaintiff must establish a *prima facie* case for employment discrimination. "To establish a *prima facie* case of disability or perceived disability discrimination, a plaintiff must prove that: '(1) [s]he was disabled (or perceived to be disabled); (2) [s]he was objectively qualified [to perform the essential functions of the job of the] former position; (3) [s]he was terminated; and (4) the employer sought someone to perform the same work after the plaintiff's discharge.'" *Photis v. Sears Holding Corp.*, Civ. No. 11-6799, 2013 WL 3872519, at *6 (D.N.J. July 25, 2013) (quoting *Simonetti v. Broadridge Fin. Solutions, Inc.*, Civ. No. 10-3903, 2012 WL 32931, *10 (D.N.J. Jan.5, 2012)); *see also Bell v. KA Indus. Servs., LLC*, 567 F. Supp. 2d 701, 706 (D.N.J. 2008) (stating the elements for a *prima facie* disability discrimination claim under the NJLAD.)[6]

Second, if a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate nonretaliatory or non-discriminatory reason for the adverse employment action. *Clowes v. Terminix Int'l, Inc.*, 538 A.2d 794, 805 (1988). Third, the plaintiff bears the final burden to demonstrate that the defendant's proffered reason is a mere pretext through evidence that the provided rationale is false or that the real reason for the adverse action was discriminatory or retaliatory animus. *Zive*, 867 A.2d at 1140; *see also Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (requiring plaintiff to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more

---

[6]     New Jersey Courts apply the same standard to NJLAD claims as federal courts apply to federal discrimination claims. *See Hashem v. Hunterdon Cnty.*, Civ. No. 15-8585, 2016 WL 5539590, at *11 n.15 (D.N.J. Sept. 29, 2016). As the Third Circuit Court of Appeals has noted, "there is a low bar for establishing a *prima facie* case for employment discrimination." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).

likely than not a motivating or determinative cause of the employer's action" (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994))).

At the pleading stage, however, the plaintiff need not prove a *prima facie* case.  *See Kelly v. HD Supply Holdings, Inc.*, Civ. No. 14-372, 2014 WL 5512251, at *3 (D.N.J. Oct. 31, 2014) (finding plaintiff pled sufficient facts to survive a motion to dismiss because plaintiff plausibly demonstrated that he was fired "under circumstances giving rise to an inference of discrimination").  Rather, it is enough that "Plaintiff has alleged facts that *could* sustain a *prima facie* case in discovery."  *Cotto v. Ardagh Glass Packing, Inc.*, Civ. No. 18-1037, 2018 WL 3814278, at *3 (D.N.J. Aug. 10, 2018) (emphasis added); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (noting that a discrimination claim may survive a motion to dismiss so long as the plaintiff pleads "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" that the plaintiff can satisfy a *prima facie* case for discrimination); *see also Bell*, 567 F. Supp. 2d at 706 ("'[A]n employment discrimination plaintiff does not need to plead a *prima facie* case of discrimination . . . ,' in part because the *McDonnell Douglas* standard is an evidentiary standard, not a pleading standard.") (citation omitted).  "In addition, under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a *prima* facie case because the McDonnell Douglas framework does not apply in every employment discrimination case.  For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a *prima facie* case."  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002).

1. J5

Defendants argue that Plaintiff's disability discrimination should be dismissed for two reasons: (1) "Plaintiff cannot plausibly allege that she can perform the essential functions of the

job," and (2) "indefinite leave is not a reasonable accommodation, and thus, Plaintiff cannot allege a discrimination disability claim." (ECF No. 8-1 at 11-15.) In support of their arguments, Defendants cite Plaintiff's doctor's note which states that as of May 18, 2022, Plaintiff was not capable of gainful employment "at this time or for the foreseeable future" and recommended that Plaintiff's leave be extended to September 2022. (ECF No. 8-2 at 24.) As to Defendants' first argument, they assert that "Plaintiff fails to plead, argue, or otherwise present any facts to allege that she was able to perform the essential functions of the employment with or without an accommodation." (*Id.* at 13.) Plaintiff counters that she kept Defendants informed of her anticipated return date. (ECF No. 1-1 ¶¶ 21-25.)

As an initial matter, the Court must determine whether it can consider Plaintiff's doctor's note, which is first submitted with Defendants' moving brief. (*See* ECF No. 8-2 at 24.) "Consideration of matters outside the pleadings, other than documents referenced in or attached to the pleadings, is not generally permitted in a Rule 12(b)(6) motion to dismiss." *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 208 (D.N.J. 2011). When a court considers facts outside of the pleadings during a motion to dismiss, the Court is required to convert the motion to one for summary judgment. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "However, a court may consider documents that are 'integral to or explicitly relied upon in the complaint' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Mills v. Ethicon*, Inc., 406 F. Supp. 3d 363, 372 (D.N.J. 2019) (first citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999); and then citing *In re Asbestos Prods. Liab. Litig.* (No. VI), 822 F.3d 125, 133 n.7 (3d Cir. 2016)).

Plaintiff does not appear to challenge the Court's review or consideration of her May 18, 2022 doctor's note. *See O'Neal v. Middletown Twp.*, Civ. No. 18-5269, 2019 WL 77066, at *3 (D.N.J. Jan. 2, 2019) (plaintiff's failure to raise argument in opposition to a motion to dismiss "constitutes waiver of same" (collecting cases)). However, even if the Court were to consider the document on a motion to dismiss, it would not warrant a dismissal of Plaintiff's claims at this early stage. Indeed, the cases cited by Defendants were almost uniformly decided at the summary-judgment stage. *See, e.g.*, *Shann v. Atl. Health Sys.*, Civ. No.12-4822, 2017 WL 5260780, at *16-18 (D.N.J. Nov. 13, 2017) (granting summary judgment where "leave-of-absence request was not a reasonable accommodation because the record indicate[d] that it was for an undetermined duration"); *Bourhill v. Nextel of New York, Inc.*, Civ. No. 10-5793, 2013 WL 1680140, at *5-6 (D.N.J. Apr. 17, 2013) (granting summary judgment where plaintiff was discharged "after it became clear that [p]laintiff would not be able to return to work for what was then an indefinite period of time").

Whether Plaintiff's disability prevented her from performing essential job functions is a question of fact and thus best suited for summary judgment or trial. *See Rich v. Verizon New Jersey Inc.*, Civ. No. 161895, 2017 WL 6314110, at *12 (D.N.J. Dec. 11, 2017) (evaluating whether a plaintiff could perform an essential job function at summary judgment). In addition, whether Plaintiff's NJLAD claim can survive a motion to dismiss under Rule 12(b)(6) depends on whether the Complaint includes "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" that Plaintiff can establish a *prima facie* case of disability discrimination. *Connelly*, 809 F.3d at 789.

Accepting Plaintiff's allegations as true, as the Court must do at this stage, the Court finds that the Complaint includes sufficient allegations to raise a reasonable inference that Plaintiff could

perform the essential job functions.  Plaintiff allegedly informed Defendants that she planned to return to work in September 2022 unless her medical scans scheduled for late June 2022 revealed any complications.  (ECF No. 1-1 ¶ 22.)  But Plaintiff was fired in May 2022, before she presented for her June 2022 scans.  So, at the time Plaintiff was fired, and based on the allegations in the Complaint alone, there is a factual issue as to whether Plaintiff could perform the essential functions of her employment with or without an accommodation.  (*Id.* ¶¶ 23-24.)

Defendants' indefinite-leave argument is also unavailing.  (ECF No. 8-1 at 14.)   The NJLAD "requires an employer to reasonably accommodate an employee's handicap."  *Rich v. State*, 294 F. Supp. 3d 266, 278 (D.N.J. 2018) (citation omitted).  Although "leaves of absence" are considered a reasonable accommodation, N.J. Admin. Code § 13:13-2.5(b)(1)(ii), Defendants are correct that indefinite leave is not, *see Svarnas v. AT & T Commc'ns*, 740 A.2d 662, 673 (N.J. Super. Ct. App. Div. 1999) ("[A]n indefinite unpaid leave is not a reasonable accommodation, especially where the employee fails to present evidence of the expected duration of her impairment.").

But Defendants' argument relies on the fact-sensitive premise that Plaintiff was seeking indefinite leave.  Based on the allegations in the Complaint alone, Plaintiff notified Defendants that she anticipated returning to work in September 2022.  (*See, e.g.*, ECF No. 1-1 ¶ 22-23.)  To the extent Defendants are claiming that Plaintiff could not perform the essential functions of the job with an accommodation and that, instead, Plaintiff needed an indefinite leave, Defendants would bear the burden of proving such claims with factual evidence.  *Svarnas*, 740 A.2d at 671 (citing N.J. Admin. Code § 13:13-2.8) ("The burden of proof is on the employer to demonstrate that" a decision that an employee "cannot presently perform the job even with an accommodation" is "based on an objective standard supported by factual evidence rather than on the basis of general

assumptions about particular handicaps.").  Defendants may renew this argument at a later stage, after the parties and the Court have the benefit of discovery.

In sum, Plaintiff pleads "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" that she can satisfy a *prima facie* case for discrimination. *Connelly*, 809 F.3d at 789.  Defendants motion to dismiss Count One is denied.

### 2. JOHNSON

Johnson argues that Plaintiff's NJLAD claim against him under an aiding and abetting theory must also be dismissed, because an individual cannot be liable for an employer's NJLAD violation through aiding and abetting if the plaintiff does not properly plead a discrimination claim against the employer.  (ECF No. 8-1 at 15 (citing *Gross v. City of Jersey City*, Civ. No. 18-9802, 2019 WL 2120312, at *5 (D.N.J. May 15, 2019)).)  Since the Court finds that Plaintiff properly pled a discrimination claim, this argument fails.

Johnson next asserts that he cannot be subject to supervisor liability under the NJLAD, reasoning that he was not Plaintiff's direct supervisor.  For his assertion, Johnson relies on *Cicchetti v. Morris Cnty. Sheriff's Off.*, 947 A.2d 626 (N.J. 2008).

In *Cichetti*, the Supreme Court of New Jersey held that "individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the 'aiding and abetting' mechanism that applies to 'any person.'" 947 A.2d at 644 (citing N.J. Stat. Ann. § 10:5-12(e)).  To hold an employee liable for aiding and abetting, the Court added, the plaintiff must show the following:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.

11

[*Id.* (citing *Tarr v. Ciasulli*, 853 A.2d 921, 926 (N.J. 2004)).]

But *Cichetti* does not dictate that a defendant must be the plaintiff's direct supervisor to face individual liability as an aider and abettor. *Id.* (citing *Tarr*, 853 A.2d at 928); *see Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998) (predicting "that the New Jersey Supreme Court would find that an employee aids and abets a violation of the LAD when he knowingly gives substantial assistance or encouragement to the unlawful conduct of his employer" but limiting its finding only as to supervisory employees).

This Court is not aware of any caselaw setting such a narrow rule. To the contrary, "[t]he term 'supervisor' . . . include[s] not only employees granted the authority to make tangible employment decisions, but also those placed in charge of the complainant's daily work activities." *Reynolds v. Jersey City Dep't of Pub. Works*, No. CV 2:18-1418, 2019 WL 117976, at *5 (D.N.J. Jan. 4, 2019) (quoting *Aguas v. State*, 107 A.3d 1250, 1271 (N.J. 2015)). Based on the allegations in the Complaint, Johnson's role fit within these bounds. Plaintiff alleges that Johnson, as CEO was superior to Plaintiff in J5's organization structure and played an active role in her termination. These allegations suffice at this stage. (*See* ECF No. 1-1 ¶ 33 (alleging that Johnson was the principal decision-maker at J5).) *See Tarr*, 853 A.2d at 928; *Poiner v. Cnty. of Middlesex*, 2007 WL 1627033, at *9 (N.J. Super. Ct. App. Div. June 7, 2007) (reversing dismissal of aiding-and-abetting claim against defendant who was not plaintiff's "direct supervisor" but was "in a supervisory capacity" (citing *Tarr*, 853 A.2d at 928)); *see also Gunnings v. Borough of Woodlynne*, Civ. No 05-5459, 2008 WL 11509890, at *2 (D.N.J. Mar. 31, 2008) (rejecting argument that non-direct supervisor could not be held liable under the NJLAD because plaintiff had sufficiently alleged that the defendant "had authority to take tangible employment actions" against him).

The Court then must determine whether Plaintiff's Complaint includes sufficient allegations to support an aiding and abetting theory of liability.[7]  Again, Plaintiff need not establish a *prima facie* case at this stage; she need only allege sufficient facts giving rise to the inference that Johnson unlawfully aided and abetted J5.  *See Connelly*, 809 F.3d at 789.  Based on this standard, the Court finds that Plaintiff has alleged sufficient facts at the pleading stage.

The Complaint alleges that Johnson was actively involved in the decisions to promote Plaintiff to partner and to fire her.  (ECF No. 1-1 ¶¶ 9, 11, 26.)  The promotion and termination letters that are attached to the Complaint are both signed by Johnson.  (ECF No. 1-1 at 14, 16.)  Additionally, Johnson directed Plaintiff to keep him appraised of her recovery progress during her long-term disability, and Plaintiff did in fact do so.  (*Id.* ¶¶ 21, 24.)  All told, Plaintiff's Complaint includes more than the "mere possibility of misconduct" for an aiding and abetting claim.  *Gelman*, 583 F.3d, at 190 (quoting *Iqbal*, 556 U.S. at 679).  Thus, Johnson's motion to dismiss Count One is denied.  *Id.*

### B.  BREACH OF CONTRACT

A claim for breach of contract must plausibly plead "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."  *Frederico v. Home Depot*, 507 F. 3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)).  When evaluating a breach-of-contract claim, "[t]he court determines what obligations the parties owed each other, often by interpreting the express contract, and decides if one party failed

---

[7]      "In addition, courts construe the aiding and abetting theory broadly, such that an individual supervisor can aid and abet his own conduct."  *O'Toole v. Tofutti Brands, Inc.*, 203 F. Supp. 3d 458, 467 (D.N.J. 2016) (citing *Rowan v. Hartford Plaza Ltd.*, 2013 WL 1350095, at *7 (N.J. Super. Ct. App. Div. Apr. 5, 2013)).

to do what it promised." *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 373 (D.N.J. 2021) (citing

*Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 392 (N.J. 2019)).

Plaintiff alleges that Defendants breached her partnership contract, which gave her a five-

percent interest in J5 (ECF No. 1-1 ¶ 37), and that she suffered damages through loss of her

ownership interest in J5 when Defendants fired her (*id.* ¶ 40).

Defendants do not dispute that a contract exists.  (*See* ECF No. 8-1 at 15 ("Here, the

undisputed contract in this matter is set out by the June 24, 2021, offer letter.").)  Instead,

Defendants dispute that they breached the contract.  (*Id.* at 16.)  The contract states:

> I have been so impressed with your hard work and dedication to the
> company and our clients, a simple promotion in title alone was not
> going to work.  Your promotion to Partner is not simply a title
> promotion it comes with a 5% ownership.  That makes you . . . [an]
> owner[] of J5.  Your dedication and commitment has helped drive
> this company and will help take us [into] the future.
>
> Please keep this letter for your records.  The ownership rights are
> withdrawn if you are fired for gross negligence or misconduct.  You
> must be employed by the company six months prior to sale for the
> rights of ownership to apply.  Should you have any questions or
> concerns please feel free to contact me directly.  Keep up the
> outstanding work and commitment to the company.
>
> [(ECF No. 1-1 at 14.)]

Defendants argue that they cannot be liable for breach-of-contract, based on the provision

that Plaintiff "must be employed by the company six months prior to sale for the rights of

ownership to apply." (ECF No. 8-1 at 16 (citing ECF No. 1-1 at 14).)  Plaintiff counters that this

clause means that "[Plaintiff] would not be able to exercise her 5% membership interest in J5 to

receive her share of the net sale proceeds if the company was sold in the six months immediately

following the letter (i.e., six months from June 24, 2021)." (ECF No 10-1. at 14.)  Plaintiff argues

that "[t]he contract further provides that [Plaintiff's] membership interest could only be withdrawn in very limited circumstances, none of which are relevant here." (*Id.*)

"Contract interpretation is usually a question of law in New Jersey." *SmithKline Beecham Corp. v. Rohm & Haas Co.*, 89 F.3d 154, 159 (3d Cir. 1996) (citing *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 767 F.2d 43, 47 (3d Cir.1985)). "Under New Jersey law, courts should interpret a contract considering 'the objective intent manifested in the language of the contract in light of the circumstances surrounding the transaction.'" *Id.* In doing so, the Court is first tasked with evaluating whether a contract is clear or ambiguous. *See Fed Cetera, LLC v. Nat'l Credit Servs.*, Inc., 938 F.3d 466, 469 (3d Cir. 1996) (applying New Jersey law and finding that "whether a contract is clear or ambiguous is a question of law."). To determine whether a contract is ambiguous, the Court "may consider the words of the agreement, alternative meanings suggested by counsel, and extrinsic evidence offered in support of those meanings.'" *Newport Assocs. Dev. Co. v. Travelers Indem. Co. of Illinois*, 162 F.3d 789, 792 (3d Cir. 1998) (citing *Pennbarr Corp. v. Insurance Co. of N. Am.*, 976 F.2d 145, 151 (3d Cir. 1992)).

On a motion to dismiss, "if the words of the contract are ambiguous, any external evidence-that is, the facts as alleged in the [] Complaint, and other documentary evidence attached to the pleading-must be construed in the light most favorable to [plaintiff], the non-moving party." *Educ. Impact, Inc. v. Danielson*, Civ. No. 14-937, 2015 WL 381332, at *7 (D.N.J. Jan. 28, 2015). Following this, the Court may rule on the interpretation of a contract on a motion to dismiss only when the contract is unambiguous. *Wells Fargo Bank, N.A. for Morgan Stanley Cap. I Inc., Com. Mortg. Pass-through Certificates, Series 2006-IQ12 v. Lichter Gateway IV, LLC*, Civ. No. 17-2036, 2017 WL 5957072, at *20 (D.N.J. Dec. 1, 2017) (denying motion to dismiss on breach of

contract claims because disputed contract terms were not so clear and unambiguous to "permit resolution as a matter of law on a motion to dismiss").

Here, Defendants dispute whether the contract provided Plaintiff with a five percent ownership interest in J5.  (ECF No. 8-1 at 16.)  Applying New Jersey's principles of contract interpretation, the Court finds that this issue is best resolved following discovery.  *See Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 49 F. Supp. 2d 750, 775 (D.N.J. 1999) (finding at the motion to dismiss stage that "construing all facts in favor of [plaintiff], it is simply too early to determine whose interpretation of the relevant provision is correct or even whether the provision is sufficiently ambiguous to warrant referral to the fact-finder").  At this stage, both sides put forward reasonable arguments as to the meaning of the terms of the contract.  Without discovery, "it is simply too early to determine whose interpretation of the relevant provision is correct or even whether the provision is sufficiently ambiguous to warrant referral to the fact-finder." *Biovail*, 49 F. Supp. 2d at 775.

As Plaintiff alleges the elements of a breach-of-contract claim with supporting facts, the sum of which "plausibly give[s] rise to an entitlement for relief," Plaintiff has stated a claim for breach of contract.  Therefore, Defendants' motion to dismiss Count Two as to J5 is denied.

Johnson further argues that the breach-of-contract claim against him should be dismissed because he entered the contract on behalf of J5 and not in his individual capacity.  (ECF No. 14 at 15-16.)  The Court agrees.

Pursuant to N.J. Stat. Ann § 42:2B-23:

> [T]he debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company; and no member, manager, employee or agent of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company . . . by reason

> of being a member, or acting as a manger, employee or agent of the
> limited liability company.

Because Plaintiff's Complaint lacks any allegations that Johnson entered the contract with the intent to be held personally liable, Plaintiff's breach of contract claim against Johnson cannot stand. *See Hopkins v. Duckett*, Civ. No. 5883-08T1, 2012 WL 124842, at *13 (N.J. Super. Ct. App. Div. Jan. 17, 2012) (citing N.J. Stat. Ann § 42:2B-23); *Corp. Incentives, Inc. v. Unified Safe Guard, LLC*, Civ. No. 20-13471, 2021 WL 2043092, at *2 (D.N.J. May 21, 2021) (same); *Irwin Katz & Assoc., Inc., v. Concepts in Health, Inc.*, Civ. No. 13-1217, 2014 WL 6471486, at *14 (D.N.J. Nov. 19, 2014) ("[T]he mere fact that an individual executed a contract for the purpose of binding a corporation does not also render that individual liable.").

To be sure, the "limited liability protection provided by an LLC may be abrogated under the doctrine of piercing the corporate veil, which applies 'in cases of fraud, injustice, or the like.'" *Corp. Incentives*, 2021 WL 2043092, at *2 (quoting *State Dep't of Env't Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983)). "[T]he party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity." *Tung v. Briant Park Homes, Inc.*, 670 A.2d 1092, 1096 (N.J. App. Div. 1996) (citation omitted).

Yet here, Plaintiff has not pled any facts suggesting that she seeks to pierce the corporate veil. Nor does the Complaint include any allegations of fraud or injustice. For these reasons, Count Two against Johnson is dismissed without prejudice.[8]

---

[8]      It follows that the Court must also dismiss without prejudice Plaintiff's good faith and fair dealing claim against Johnson. *See F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) ("[Appellees] fail to cite a single case for the proposition that *non-parties* to a contract can be held liable for a breach of a contractual duty of good faith and fair dealing); *see also Cimino v. Delaware Dep't of Lab.*, Civ. No. 01-458, 2002 WL 265095, at *6 (D. Del. Feb. 25, 2002) (dismissing claim

### C.  Implied Covenant of Good Faith and Fair Dealing

Inherent in every contract is "the obligation of good faith and fair dealing" and the obligation "operates exactly as if it had been explicitly written into the parties' agreement or contract." *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 417 (1997).  "The purpose of this implied clause of good faith and fair dealing is to protect each party's reasonable expectations that the objects and purposes they sought to achieve by means of their agreement will be achieved." *Id.* at 585.  "Good faith conduct is conduct that does not 'violate community standards of decency, fairness or reasonableness.'"  *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395 (N.J. 2005) (quoting *Wilson*, 773 A.2d at 1126).  Although there are "myriad forms of conduct that may constitute violation of the covenant of good faith and fair dealing," and "[e]ach case is fact-sensitive," *id.* at 396, "[p]roof of 'bad motive or intention' is vital to an action for breach of the covenant," *id.* (quoting *Wilson*, 773 A.2d at 1130).

Here, the Complaint alleges that Defendants breached the covenant of good faith and fair dealing by "fail[ing] to pay [Plaintiff] in accordance with her 5% membership interest in J5 and when they terminated her employment despite knowing that she was expecting to return to work in the near future and repeatedly asking about her return-to-work plans" and "by purporting to revoke or withdraw her 5% membership interest at the time of her termination without any legal basis to do so."  (ECF No. 1-1 ¶¶ 43, 44.)  On these allegations alone, the Court finds that Plaintiff has not alleged sufficient facts to show Defendants acted in bad faith, as required to state a claim for a breach of the implied covenant of good faith and fair dealing.  *Kenny v. Search*, Civ. No. 15-0456, 2015 WL 4394241, at *4 (D.N.J. July 15, 2015), *aff'd Kenny v. Onward Search*, 713 F.

---

for breach of implied covenant of good faith and fair dealing because defendant was not party to contract).  Plaintiff has not cited caselaw to the contrary.

App'x 112 (3d Cir. 2017) ("because Plaintiff has failed to allege any facts that point to an act of bad faith on the part of Defendants, Count II [for breach of the implied covenant of good faith and fair dealing] is dismissed").  Defendants' conduct, even viewed in a light most favorable to Plaintiff, does not give rise to an inference that Defendants acted with "bad motive or intention." As such, the Court dismisses Count Three without prejudice.

Moreover, Plaintiff's breach of covenant claim (Count Three) appears to be duplicative of her breach of contract claim (Count Two).  "[A] plaintiff may not pursue a claim for a breach of the implied covenant of good faith and fair dealing if the claim is duplicative of the plaintiff's breach of contract claim."  *Cedar Holdings, LLC v. Menashe*, Civ. No. 16-7152, 2017 WL 1349321, at *3 (D.N.J. Apr. 7, 2017).  "A claim for breach of the implied covenant is duplicative of a breach of contract claim when allegations of bad faith all relate to actions that form the basis of the breach of contract claim."  *Id.* (citing *Intervet, Inc. v. Mileutis, Ltd.*, Civ. No. 15-1371, 2016 WL 740267, at *5 (D.N.J. Feb. 24, 2016)).  Here, Plaintiff's allegations regarding her breach of covenant claim relates to and arises from the allegations that establish the basis for Plaintiff's breach of contract claim.  *See Valley Joist, LLC v. OEG Bldg. Materials, LLC*, Civ. No. 21-20374, 2023 WL 2238689, at *8 (D.N.J. Feb. 27, 2023).  As with the breach-of-contract claim, the basis for Plaintiff's breach-of-covenant claim is that Defendants unlawfully terminated her employment and unlawfully revoked her five percent ownership interest in J5.  (*Compare* ECF No. 1-1 ¶ 37 ("[Defendants] breached the agreement by purporting to revoke or withdraw her 5% membership interest at the time of her termination without any legal basis to do so."), *with id.* ¶¶ 43, 44 ("[Defendants] breached the implied covenant . . . when they terminated her employment" and when they purported to "revoke or withdraw her 5% membership interest at the time of her termination").)

### D. ACCOUNTING

Finally, Plaintiff brings Count Four against J5 for an accounting of J5's books and records. In the Complaint, Plaintiff cites two Florida statutes in support of her accounting claim. Fl. Stat. §§ 605.0410(2)(b)(1) and (2) and 605.0802.[9]

As a threshold matter, J5 argues that Plaintiff's common law "accounting claim is not a claim upon which relief can be granted." (ECF No. 14 at 17-18.) The Court agrees. *See Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1310 n.21 (11th Cir. 2014) ("[A]n accounting is best understood as a remedy for a cause of action, not as a cause of action in its own right."); *see also Johnson v. Pullman, Inc.*, 845 F.2d 911, 913 (11th Cir. 1988) ("Although plaintiffs' complaint contained a count in which an accounting was sought, that relief would not be available here absent some independent cause of action."); *Becker v. Davis*, 491 F.3d 1292, 1305 (11th Cir. 2007), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, (2009) ("[A]n accounting is a remedy attached to a separate independent cause of action."); *Friedman v. Hammer*, Civ. No. 19-62481, 2020 WL 2559549, at *5 (S.D. Fla. May 20, 2020) ("[A]n accounting, however, is a remedy for a cause of action, not a cause of action in its own right.").[10] Moreover, Plaintiff has not asserted any allegations regarding the information that was sought and not provided or that it was "material to the proper exercise of the [Plaintiff's] rights and duties."

---

[9]      Upon review of the record, the Court is not aware of any argument by Defendants challenging Plaintiff's application of Florida law to Count Four. As a result, the Court will apply Florida law to Count Four. *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014) (finding that failing to raise a choice of law issue may result in waiver of the issue).

[10]      "To obtain an accounting under Florida law, then, a party must show either (1) a sufficiently complicated transaction and an inadequate remedy at law or (2) the existence of a fiduciary relationship." *Zaki Kulaibee Establishment*, 771 F.3d at 131.

To the extent Plaintiff asserts a claim under Fl. Stat. §§ 605.0410(2)(b)(1) and (2) and

605.0802, the Court also finds that these claims must be dismissed without prejudice.  Specifically,

Fl. Stat. § 605.0410(2)(b)(1) and (2) state:

> The company shall furnish to each member:
>
> Without demand, any information concerning the company's activities, affairs, financial condition, and other circumstances that is known to the company and is material to the proper exercise of the member's rights and duties under the operating agreement or this chapter, except to the extent the company can establish that it reasonably believes the member already knows the information; and
>
> On demand, other information concerning the company's activities, affairs, financial condition, and other circumstances, except to the extent the demand or information demanded is unreasonable or otherwise improper under the circumstances.

The second statute Plaintiff asserts in the Complaint, titled "Derivative action," provides:

> A member may maintain a derivative action to enforce a right of a limited liability company if:
>
> (1) The member first makes a demand on the other members in a member-managed limited liability company or the managers of a manager-managed limited liability company requesting that the managers or other members cause the company to take suitable action to enforce the right, and the managers or other members do not take the action within a reasonable time, not to exceed 90 days; or
>
> (2) A demand under subsection (1) would be futile, or irreparable injury would result to the company by waiting for the other members or the managers to take action to enforce the right in accordance with subsection (1).
>
> [Fl. Stat. § 605.0802(2)(1).]

Defendant argues that the Court must dismiss any potential claim under these statutes because

Plaintiff has not pled that she made a demand pursuant to these statutes.  (ECF No. 8-1 at 18.)

Plaintiff counters this by claiming that she was not required to make a demand because it would

have been futile under Fl. Stat. § 605.0802(2)(1). (ECF No. 10-1 at 17.)  However, Fl. Stat. § 605.0802 pertains to derivative actions.  To the extent Plaintiff seeks to assert a derivative claim against J5, Rule 23.1 "requires that a plaintiff bringing a derivative claim and asserting that a pre-suit demand would have been futile, must plead futility with particularity."  *Silver Crown Invs., LLC v. Team Real Est. Mgmt., LLC*, 349 F. Supp. 3d 1316, 1327 (S.D. Fla. 2018) (applying Rule 23.1 to Fl. Stat.  § 605.0802 and noting that to plead futility with particularity under this statute, the plaintiff must allege sufficient facts to show that the manager of the LLC was not capable of utilizing independent and disinterested business judgement).  Since Plaintiff's one allegation in the Complaint stating that demand would be futile is not sufficient (ECF No. 101 ¶ 51), Plaintiff fails to plead futility with particularity.  Therefore, any potential claim under Fl. Stat. §§ 605.0410(2)(b)(1) and (2) and 605.0802 is dismissed without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion is **GRANTED** in part and **DENIED** in part.  Defendants' Motion to Dismiss Counts One and Two against J5 is **DENIED**.  Defendants' Motion to Dismiss Count One against Johnson is **DENIED**.  Defendants' Motion to Dismiss Count Two against Johnson is **GRANTED** without prejudice.  Defendants' Motion to Dismiss Counts Three and Four is **GRANTED** without prejudice.  The Court grants Plaintiff leave to file an amended complaint within thirty (30) days of the entry of the accompanying Order.

Dated: September 29, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE