UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAELA M. WARK,<br><br>Plaintiff,<br><br>v.<br><br>J5 CONSULTING, LLC, and MICHAEL JOHNSON,<br><br>Defendants. | Civil Action No. 23-00266 (GC) (DEA)<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Michaela M. Wark, by way of First Amended Complaint against Defendants J5 Consulting, LLC and Michael Johnson, says:

## THE PARTIES

1. Plaintiff Michaela M. Wark ("Plaintiff" or "Wark"), at all relevant times and as of this date, has been and is a resident of the Borough of Rumson, Monmouth County, New Jersey.

2. Defendant J5 Consulting, LLC ("J5") is a limited liability company incorporated under the laws of the State of Florida with a principal place of business at 166 West Putnam Avenue, Greenwich, Connecticut 06830.

3. Defendant Michael Johnson ("Johnson") is a member and chief executive officer of J5 and is a resident of the State of Connecticut.

## JURISDICTION AND VENUE

4. On January 18, 2023, Defendants filed a Notice of Removal with this Court on the basis of diversity jurisdiction, claiming that there is complete diversity,

as Plaintiff is a citizen and a resident of the State of New Jersey, J5 is a citizen of the States of Connecticut and Florida, Johnson is a citizen and resident of the State of Florida, and the matter in controversy exceeds $75,000.00.

5. Wark did not file a motion to remand the matter to Superior Court in New Jersey where it was originally filed.

6. Despite it being Wark's position that she is a citizen and resident of the State of New Jersey, and that by virtue of her five percent (5%) interest in J5, J5 is also a citizen of the State of New Jersey and therefore complete diversity of citizenship does not exist, a position, whether waivable by the Court or not and that Wark does not concede or waive, was asserted in the "Joint Certification of the Citizenship of the Parties in Diversity Cases" and Wark consents to the jurisdiction of this Court and this venue for all matters in controversy.

### FACTS COMMON TO ALL COUNTS

7. On or about July 15, 2019, Wark started her employment with J5 as a senior consultant.

8. In light of her excellent performance, Johnson provided Wark a modest raise on or about April 15, 2020.

9. On June 24, 2020, Johnson came to Wark's home in Rumson with flowers and champagne to inform her that he was making her a partner and 5% owner of J5. At the same time, he provided her a copy of a letter memorializing her 5% membership interest in J5. A true and correct copy of the letter, which is misdated 2021 instead of 2020, is attached as Exhibit A.

096868.000000 8610470v1

10. The letter expressly states: "Your promotion to Partner is not simply a title promotion it comes with a 5% ownership. That makes you, Maria, and my family owners of J5." The letter also advised Wark to "keep this letter for your records."

11. During the June 24, 2020 visit, Johnson also informed Wark that J5 was worth approximately $20,000,000.00 and therefore her 5% membership interest was worth approximately $1,000,000.00.

12. On the same day, Johnson provided new business cards to Wark listing her as a "partner" in light of the promotion and her membership interest in J5.

13. Shortly thereafter, Wark was asked to change her email signature block to reflect her new title and update her LinkedIn profile, which she duly did.

14. About one year later, on August 26, 2021, Wark had a doctor's appointment. During the visit, an ultrasound was performed and Wark was taken to the emergency room.

15. On September 2, 2021, Wark was informed that she had a clear cell ovarian tumor on her right ovary that had ruptured and she needed emergency surgery.

16. On September 4, 2021, Wark underwent a full hysterectomy.

17. In October 2021, she started chemotherapy.

18. On October 27 and November 1, 2021, she underwent two rounds of emergency surgery to remove bowel obstructions. During this time, her chemotherapy sessions were paused.

19. Wark restarted chemotherapy in December 2021 and her final session was on January 31, 2022.

20. During the 180-day waiting period for long-term disability insurance, J5 paid Wark's base salary. Once the long-term disability insurance started paying benefits, J5 paid the 40% differential not covered by the insurance.

21. Throughout her medical leave of absence, Wark kept J5 and Johnson informed of her health condition and her expected return to work date.

22. On May 20, 2022, Wark informed J5 that she would likely be returning to work in September 2022 unless her medical scans – scheduled for June 22, 2022 – revealed a problem.

23. On May 23, 2022, Wark met with Maria Santos Bathan ("Bathan"), who is also a J5 partner, at the Navesink Country Club where they spoke of Wark's return to J5 in September 2022.

24. Two days later, Wark received a text message from Johnson where he asked her to keep him informed of her expected return date.

25. On May 26, 2022, Wark spoke with Bathan about various work issues but no concern was raised about her expected return date.

26. Therefore, it came as a complete surprise when, on May 31, 2022, Wark received a termination notice from J5 delivered to her home. Notably, the letter was sent on May 26, 2022 but it was dated May 16, 2022. A true and correct copy of the letter is attached as Exhibit B.

27. By letter dated August 4, 2022 to Johnson and J5's registered agent for service, Plaintiff, through counsel, and as a five percent (5%) member of J5, demanded in writing the books and records of J5, but despite the demand, they were not provided.

## COUNT ONE
## VIOLATION OF THE LAW AGAINST DISCRIMINATION
## (AGAINST BOTH DEFENDANTS)

28. Wark repeats and restates each of the allegations contained in paragraphs 1-26 above as if set forth at length herein.

29. The New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 et seq. prohibits, among other things, an employer from discriminating and taking an adverse employment action against an employee on the basis of a medical disability. N.J.S.A. 10:5-12.

30. Wark was medically disabled by virtue of her significant medical condition and consequent admission to the hospital for surgery and subsequent treatment for cancer.

31. J5 and Johnson were on notice of Wark's medical disability.

32. J5 terminated Wark's employment wholly or partly upon Wark's medical disability.

33. J5's termination of Wark constitutes an adverse employment action.

34. Johnson, as the chief executive officer and principal decision-maker of J5, aided and abetted J5's unlawful termination of Wark.

35. Wark has suffered damages, including but not limited to, loss of pay,

loss of employment benefits, and severe emotional distress.

**WHEREFORE,** Plaintiff Michaela M. Wark demands judgment against Defendants J5 Consulting, LLC and Michael Johnson as follows:

A. Compensatory damages;

B. Consequential damages;

C. Punitive damages;

D. Attorneys' fees and costs;

E. Pre-judgment and post-judgment interest; and

F. Any other relief the Court deems fair and just.

## COUNT TWO
## BREACH OF CONTRACT
## (AGAINST J5)

36. Wark repeats and restates each of the allegations contained in paragraphs 1-26 above as if set forth at length herein.

37. Written agreements, when supported by consideration and relied upon are binding contracts in the State of New Jersey.

38. J5, through Johnson, entered into a written agreement with Wark, in which J5 provided Wark with a 5% membership interest in the company in exchange for her continuing to work for J5.

39. Wark relied on J5's agreement, as conveyed by Johnson, to her detriment by continuing to work for a salary below market for her position because of the 5% membership interest she received in J5.

40. In addition to unlawfully firing her, J5 and Johnson breached the

6

agreement by purporting to revoke or withdraw her 5% membership interest at the time of her termination without any legal basis to do so.

41. Wark has suffered damages, including but not limited to, loss of pay, loss of employment benefits, loss of ownership interest, and severe emotional distress.

**WHEREFORE,** Plaintiff Michaela M. Wark demands judgment against Defendant J5 Consulting, LLC as follows:

A. Imposition of a constructive trust on 5% of all distributions to members of J from June 24, 2020 to the present day and 5% of all proceeds from any sale of J5 during the pendency of this litigation;

B. Compensatory damages;

C. Consequential damages;

D. Attorneys' fees and costs;

E. Pre-judgment and post-judgment interest; and

F. Any other relief the Court deems fair and just.

### COUNT THREE
### BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING
### (AGAINST J5)

42. Wark repeats and restates each of the allegations contained in paragraphs 1-26 above as if set forth at length herein.

43. All contracts in the State of New Jersey contain an implied covenant of good faith and fair dealing.

44. Although the parties disagree as to its terms, there is a contract between J5 and Wark pursuant to which Wark was granted a five percent (5%) interest in J5,

7

which according to Wark, was an unconditional grant.

45. J5 granted to Wark this five percent (5%) interest in J5 in consideration and acknowledgment of Wark's loyalty and hard work while working for J5, particularly during the pandemic, when the benefits consulting services of J5 were in high demand.

46. Notwithstanding, J5 has taken the position that the grant was conditioned upon Wark being employed by J5 during the six-month period prior to a sale of J5.

47. In addition, and/or alternative to unlawfully terminating Wark in violation of N.J.S.A. 10:5-1, et seq. as set forth herein, J5, terminated Wark to ensure she would not be employed in the six months prior to a sale of J5 so that J5, in light of its position that Wark's interest was conditional, could avoid honoring her five percent (5%) interest in J5.

48. J5 therefore breached the implied covenant of good faith and fair dealing by taking this action with the bad faith intention and motive to deprive Wark of her five percent (5%) membership interest in J5 and subvert the purpose and spirit of the agreement, even based on J5's unfounded and position as to Wark's ownership interest.

49. J5 made Wark a partner in order to ensure her continued employment with J5, which was successful, as Wark remained loyal to J5 and stayed with J5 until she was terminated, but J5, clearly in bad faith, changed the terms of the agreement to eliminate in its entirety the precise consideration that J5 had provided Wark and

that she accepted. As a result of J5's breach of the implied covenant and bad faith, Wark has not received the reasonably anticipated benefits of the agreement she had with J5.

50. Wark has suffered damages, including but not limited to, loss of pay, loss of employment benefits, and severe emotional distress.

**WHEREFORE,** Plaintiff Michaela M. Wark demands judgment against Defendant J5 Consulting, LLC as follows:

A. Imposition of a constructive trust on 5% of all distributions to members of J5 from June 24, 2020 to the present day and 5% of all proceeds from any sale of J5 during the pendency of this litigation;

B. Compensatory damages;

C. Consequential damages;

D. Attorneys' fees and costs;

E. Pre-judgment and post-judgment interest; and

F. Any other relief the Court deems fair and just.

### COUNT FOUR
### ACCOUNTING
### (AGAINST J5)

51. Wark repeats and restates each of the allegations contained in paragraphs 1-26 above as if set forth at length herein.

52. J5's internal business operations are governed by Florida law.

53. Section 605.0410(2)(b)(1) of the Florida Statutes provides that "[w]ithout demand, any information concerning the company's activities, affairs,

9

financial condition, and other circumstances that is known to the company and is material to the proper exercise of the member's rights and duties under the operating agreement or this chapter, except to the extent the company can establish that it reasonably believes the member already knows the information" shall be furnished to each member of the company.

54. Section 605.0410(2)(b)(2) of the Florida Statutes provides that "[o]n demand, other information concerning the company's activities, affairs, financial condition, and other circumstances, except to the extent the demand or information demanded is unreasonable or otherwise improper under the circumstances" shall be provided to each member of the company within 10 days of the demand.

55. By written demand of counsel dated August 4, 2022, Wark, in her capacity as a five percent (5%) member of J5, demanded that she be provided the books and records of J5.

56. Despite the demand, J5 failed to provide to Wark the books and records of J5 within ten (10) days and to date, has not provided her with the books and records to date.

57. Wark's demand is not unreasonable or improper under the circumstances, as she is entitled, as a member of J5, to receive the books and records of the company to determine the amounts to which she is entitled by way of dividends or distributions, as well as to quantify her membership interest (Wark never received any K-1s or amounts based on her ownership interest, and the only information Wark has relative to the value of her membership interest is Johnson's representation that

096868.000000 8610470v1

J5 was worth $20,000,000.00 and that therefore, Wark's membership interest was worth $1,000,000.00, which Johnson made to Wark verbally on June 24, 2020, and in several subsequent conversations).

**WHEREFORE,** Plaintiff Michaela M. Wark demands judgment against Defendants J5 Consulting, LLC as follows:

    A.    A full accounting of J5's books and records from June 24, 2020 to the present day;

    B.    Attorneys' fees and costs;

    C.    Pre-judgment and post-judgment interest; and

    D.    Any other relief the Court deems fair and just.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff Michaela M. Wark demands a trial by jury on any and all issues triable of right by a jury.

_____
Barry M. Capp, Esq.

Dated:  October 11, 2023

## CERTIFICATION

I certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding.  I know of no other parties to be joined at this time other than those named herein.

I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  October 11, 2023          By: _____
Ansell Grimm & Aaron, P.C.
Barry M. Capp, Esq.
1500 Lawrence Avenue, CN 7807
Ocean, New Jersey 07712
(732) 922-1000/(732)922-6161 (fax)
Attorneys for Plaintiff Michaela M. Wark